HODGSON RUSS LLP
1540 Broadway, 24th Floor
New York, New York  10036
Telephone:  (646) 218-7605
Facsimile:  (646) 218-7665
Neil B. Friedman
nfriedma@hodgsonruss.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

CURLIN MEDICAL INC.,
ZEVEX, INC., and
MOOG INC.,

               Plaintiffs

v.

ACTA MEDICAL, LLC. and
JAMES BRUNO.

             Defendants.

_____

Hon.

Civil No.

## COMPLAINT

     Curlin Medical Inc. ("Curlin"), ZEVEX, Inc. ("Zevex"), and Moog Inc. ("Moog") (collectively "plaintiffs"), by and through their attorneys, for their complaint against ACTA Medical, LLC ("ACTA") and James Bruno ("Bruno") (collectively "defendants"), allege as follows:

### The Parties

     1.     Moog is a New York corporation with a principal place of business at 400 Jamison Road, East Aurora, New York 14052.  Moog is a worldwide designer, manufacturer, and integrator of precision motion control products and systems.

     2.     Curlin is a Delaware corporation with a principal place of business at

Seneca and Jamison Road, East Aurora, New York 14052.  Curlin is a wholly-owned subsidiary of Moog.  It is a leading developer and supplier of infusion therapy products around the world.

3.      Zevex is a Delaware corporation with a principal place of business at 4314 Zevex Park Lane, Salt Lake City, Utah 84123.  Zevex is a wholly-owned subsidiary of Curlin. Zevex is one of the world's leading suppliers of enteral products, including portable and stationary pumps, disposable sets, and related accessories.

4.      Upon information and belief, ACTA is a New Jersey limited liability company with a principal place of business at 4 Nevius Drive, Flemington, New Jersey 08822. ACTA distributes and sells certain medical products throughout the United States, including New Jersey.

5.      Upon information and belief, Bruno is an individual who resides in the State of New Jersey.  Upon further information and belief, Bruno is and was at all relevant times an employee or agent of ACTA.

## Jurisdiction and Venue

6.      This is a patent and trademark infringement action brought under the patent laws of the United States, 35 U.S.C. Section 101, *et seq*., including 35 U.S.C. Section 271, and the trademark laws of the United States, including 15 U.S.C. Sections 1114, 1121(a), and 1125(a).

7.      Plaintiffs seek damages for patent infringement and an injunction precluding defendants from making, using, importing, selling or offering to sell, and from inducing others to make, use, import, sell, or offer to sell, plaintiffs' patented technology.  Curlin

- 2 -

also seeks damages for unfair competition and trademark infringement, and seeks an injunction precluding defendants from using and infringing Curlin's trademark, trade dress, and product images.

8.    This Court has subject matter jurisdiction under 28 U.S.C. Sections 1331 and 1338(a) and 15 U.S.C. Section 1121(a).

9.    This Court has personal jurisdiction over ACTA because ACTA has a principal place of business in New Jersey, because a substantial part of the events or omissions giving rise to the claims occurred within this district and state, and ACTA is subject to service in this district.

10.    This Court has personal jurisdiction over Bruno because, upon information and belief, he is domiciled in the State of New Jersey, because a substantial part of the events or omissions giving rise to the claims occurred within this district and state, and Bruno is subject to service in this district.

11.    Venue is proper under 28 U.S.C. Sections 1400 and 1391 because defendants are subject to personal jurisdiction in this district.  Defendants have also committed acts of patent infringement and trademark infringement in this district.

## Background and Facts

### Plaintiffs' Infusion Therapy Products

12.    Plaintiffs' expertise in the medical market includes the application of advanced technologies to the precision control of motion and fluids.  Plaintiffs are regarded as

leading developers of infusion therapy products, which are products used by caregivers to intravenously administer medication to a patient.

13.     Plaintiffs have invested substantial time and resources in research and development in order to design and develop advanced infusion systems that improve medication safety, optimize application performance, and reduce medication expenses.  Plaintiffs offer a range of medical pump technologies and fluid delivery systems with the goal of simplifying processes, increasing safety, and enhancing patient and caregiver outcomes.

14.     By investing substantial time and resources in research and development, plaintiffs have achieved unmatched dependability, ease-of-use, and flexibility in application of its patented products.  These three characteristics define the plaintiffs' line of infusion pumps, and is why they are so highly regarded by the caregivers who use them.

15.     Plaintiffs have a highly positive and well-known reputation and have developed positive and valuable goodwill in its trade name and products.

16.     Plaintiffs' infusion pumps require the use of an infusion administration set (an "administration set").  An administration set is a specially-designed and engineered tubing assembly, and associated customized components, used to transport liquids from a pump to a patient.  Plaintiffs' administration sets are designed specifically for use with plaintiffs' line of infusion pumps.

17.     All administration sets designed for use with plaintiffs' line of infusion pumps include an anti-free flow feature/device that prevents inadvertent free flow of the infusion

liquid.  The anti-free flow device also allows the intentional priming of the set by gravity, thereby reducing the set-up time.

18.     Plaintiffs' administration sets are uniquely designed to be easy for caregivers to use while still providing exceptional patient care and safety.

19.     Plaintiffs' administration sets are specifically designed to be used with plaintiffs' line of infusion pumps as a complete system.  At great expense, plaintiffs subjected the complete system to rigorous testing to ensure the accuracy and safety of its functions.

20.     Use of administration sets not specifically designed and tested for use with plaintiffs' line of infusion pumps poses a material risk of inaccuracy in the flow rate leading to underinfusion and overinfusion, which is dangerous and may be fatal.  In addition, the use of contaminated or incorrect materials to construct the administration sets poses a risk of leaching and contamination of fluids, placing patients at risk.

**Plaintiffs' Patents**

21.     Plaintiffs have obtained patent protection for their important invention.

22.     On December 26, 2000, the United States Patent and Trademark Office (the "USPTO") issued U.S. Patent No. 6,164,921 (the "'921 Patent"), entitled "Curvilinear Peristaltic Pump Having Insertable Tubing Assembly."  A copy of the '921 Patent is attached as **Exhibit 1**.

23.     Curlin is the owner of all rights, title, and interest in the '921 patent.

24.     On April 16, 2002, the USPTO issued U.S. Patent No. 6,371,732 (the "'732 Patent"), entitled "Curvilinear Peristaltic Pump."  A copy of the '732 Patent is attached as **Exhibit 2**.

25.     The '732 patent is a continuation of the '921 patent.

26.     Curlin is the owner of all rights, title, and interest in the '732 patent.

**Curlin's Trademarks**

27.     Curlin owns U.S. Trademark Registration No. 3,855,036 for the word "CURLIN" for use on medical infusion pumps and administration sets (the "CURLIN Mark"). The registration was issued on September 28, 2010.  A copy of the Curlin registration is attached as **Exhibit 3**.

28.     Curlin has used the CURLIN Mark in U.S. commerce since at least as early as April 2009, and it has the exclusive right to use the CURLIN Mark, nationwide, on its medical infusion pumps and administration sets.

29.     Curlin has invested substantial resources to develop, grow, and promote its CURLIN Mark.  As a direct result of Curlin's continuous and exclusive use of the CURLIN Mark, it has become widely known and recognized in the industry as Curlin's trademark and as a strong indicator of the source and quality of Curlin's goods.

30.     By virtue of Curlin's methods, the duration and scope of its use of the CURLIN Mark, the expenditure of considerable sums for promotional activities, and by virtue of the excellence of its goods, Curlin has obtained for the CURLIN Mark a most valuable

reputation.  The CURLIN Mark, and the associated goods, have gained substantial recognition and goodwill in the marketplace.

      31.    The CURLIN Mark is strong and distinctive and designates Curlin as the source of all goods advertised, marketed, sold, or used in connection with its mark in the United States.  In addition, by virtue of Curlin's use of the mark in connection with its products, and its extensive marketing, advertising, promotion, and sale of its products under that mark, the CURLIN Mark has acquired secondary meaning whereby the consuming public of this district, the State of New Jersey, and the United States associate the CURLIN Mark with a single source of high quality products and services.

## ACTA's Patent and Trademark Infringement

      32.    Defendants have infringed and continue to infringe plaintiffs' patents by making, using, importing, selling, and/or offering for sale, in this district and elsewhere, certain medical products, including but not limited to, ACTA's  "IV Administration Infusion Pump Set" which defendants represent as being "compatible with the Curlin infusion pump" (the "infringing products").

      33.    One of the specific occasions on which defendants sold the infringing products and/or offered them for sale was at the 2016 National Home Infusion Association Annual Conference and Exhibition held March 21-24, 2016 in New Orleans, Louisiana.  At that conference, defendant Bruno and other ACTA representatives displayed the infringing products and indicated that they were being introduced into the market to compete with plaintiffs' products.

34.     The infringing products do not simply infringe.  In appearance, they are nearly exact copies of plaintiffs' patented products.

35.     Defendants have copied Curlin's color schemes for the administration sets. Those color schemes are non-functional in nature.  Defendants have also copied Curlin's product codes for the infringing products, as the last three numbers of the infringing products' product codes are identical to the last three numbers of Curlin's product codes.  These similarities were intended to, and do, invoke a false association with Curlin which, due to the inferior nature of the infringing products, causes damage to Curlin's reputation.

36.     In addition, ACTA's marketing and promotional materials use the CURLIN Mark and product images, without Curlin's consent, for the infringing products, which are nearly exact (but inferior) copies of plaintiffs' patented products.  A copy of an ACTA promotional brochure for the infringing products is attached as **Exhibit 4**.

37.     Defendants' unauthorized use of the CURLIN Mark for the infringing products is likely to cause confusion or mistake or to deceive others as to the affiliation, connection, or association between Curlin and ACTA, as well as confusion concerning the source, sponsorship or approval of the infringing products.  Moreover, the inferior quality and nature of the infringing products together with their false association with Curlin, damages Curlin's reputation and goodwill.

38.     Upon information and belief, defendants are well aware of the reputation of Curlin and the CURLIN Mark, and their infringing conduct was intentionally calculated to misappropriate and trade off the goodwill developed by Curlin.

39.     Defendants' statutory violations and other wrongful acts have injured and threaten to injure plaintiffs, including loss of customers, dilution of goodwill, confusion of existing and potential customers, and injury to plaintiffs' reputation.

**First Claim for Relief**
**(Infringement of the '921 Patent)**

40.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 39.

41.     On December 26, 2000, the USPTO issued the '921 Patent.

42.     Curlin is the owner of all rights, title, and interest in the '921 patent.

43.     Defendants have infringed and continue to infringe the '921 Patent by making, using, importing, selling, and/or offering for sale, in this district and elsewhere, certain infusion therapy products, including but not limited to, ACTA's "IV Administration Infusion Pump Set" without plaintiffs' consent or permission.

44.     The infringing products infringe one or more of the following claims of the '921 patent: 1-21, and 34.

45.     Defendants' actions in infringing the '921 Patent have been, and continue to be, willful, deliberate, and/or in conscious disregard of plaintiffs' rights, making this an exceptional case within the meaning of 35 U.S.C. Section 285.

46.     As a result of defendants' infringing activities, plaintiffs sustained damages in an amount to be proven at trial.

47.     Defendants will continue their infringing activities unless and until they are restrained and enjoined by this Court.

48.     Defendants' infringing activities have caused, and will continue to cause, plaintiffs irreparable harm for which there is no adequate remedy at law, including without limitation damage to plaintiffs' reputation as suppliers of high quality unique infusion therapy products and loss of customers.

## Second Claim for Relief
## (Infringement of the '732 Patent)

49.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 48.

50.     On April 16, 2002, the USPTO issued the '732 Patent.

51.     The '732 patent is a continuation of the '921 patent.

52.     Curlin is the owner of all rights, title, and interest in the '732 patent.

53.     Defendants have infringed and continue to infringe the '732 Patent by making, using, importing, selling, and/or offering for sale, in this district and elsewhere, certain infusion therapy products, including but not limited to, ACTA's "IV Administration Infusion Pump Set."

54.     The infringing products infringe one or more of the following claims of the '732 patent: 1-3.

55.     Defendants' actions in infringing the '732 Patent have been, and continue to be, willful, deliberate, and/or in conscious disregard of plaintiffs' rights, making this an exceptional case within the meaning of 35 U.S.C. Section 285.

56.     As a result of defendants' infringing activities, plaintiffs sustained damages in an amount to be proven at trial.

57.     Defendants will continue their infringing activities unless and until they are restrained and enjoined by this Court.

58.     Defendants' infringing activities have caused, and will continue to cause, plaintiffs irreparable harm for which there is no adequate remedy at law, including without limitation damage to plaintiffs' reputation as suppliers of high quality unique infusion therapy products and loss of customers.

### Third Claim for Relief
### (Trademark Infringement (15 U.S.C. Section 1114))

59.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 58.

60.     Curlin owns the CURLIN Mark.

61.     Defendants have used the CURLIN Mark, without Curlin's permission, for the infringing products, which are nearly exact copies of plaintiffs' patented products, including non-functional attributes of the physical design and color schemes of the CURLIN Mark.

62.     Defendants' use of the CURLIN Mark for infusion therapy products is likely to cause confusion or mistake or to deceive others as to the source of the infringing products.

63.     Defendants' actions constitute trademark infringement under 15 U.S.C. § 1114 and have caused Curlin to sustain damages in an amount to be determined at trial.

64.     Upon information and belief, defendants had actual knowledge of the CURLIN Mark.  Defendants were on constructive notice of CURLIN Mark based on the federal

registration for this mark and Curlin's use of the mark in interstate commerce.  As a result, defendants' unauthorized use of the CURLIN Mark on, and in connection with advertising and marketing for their infringing products has been knowing, intentional, and willful.

65.     Pursuant to 15 U.S.C. § 1117, Curlin is entitled to treble damages, as well as the recovery of defendants' profits, the cost of this action, reasonable attorneys' fees, and a preliminary and permanent injunction restraining defendants from any further use of the CURLIN Mark and product images, including but not limited to use on their website and promotional materials.

**Fourth Claim for Relief**
**(Trademark Infringement (15 U.S.C. Section 1125(a))**

66.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 65.

67.     Curlin has used the CURLIN Mark in commerce for infusion therapy products since at least 2009.

68.     Defendants have used the CURLIN Mark and Curlin product images, without Curlin's consent, in connection with the infringing products.

69.     Defendants' use of the CURLIN Mark and product images is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association between ACTA and Curlin, or as to the origin, sponsorship, or approval of the infringing products in violation of 15 U.S.C. § 1125.

70.     By reason of the foregoing, Curlin has been damaged in an amount to be determined at trial.

71.     Pursuant to 15 U.S.C. § 1117, Curlin is entitled to treble damages, as well as the recovery of defendants' profits, the cost of this action, reasonable attorneys' fees, and a preliminary and permanent injunction restraining defendants from any further use of the CURLIN Mark and product images, including but not limited to use on their website and promotional materials.

### Fifth Claim for Relief
### (Unfair Competition (N.J.S.A. Section 56:4-1)

72.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 71.

73.     This cause of action arises under N.J.S.A. § 56:4-1 *et seq*.

74.     Defendants' unauthorized use in commerce of the CURLIN Mark and product images is likely to cause confusion, mistake or deception of purchasers and potential purchasers as to the origin, sponsorship, or approval of the infringing products by Curlin.

75.     Defendants' unauthorized use in commerce of the CURLIN Mark and product images falsely designates the origin of the infringing products and is likely to cause confusion, mistake or deception about the origin of the infringing goods.

76.     By using such copy of the CURLIN Mark and product images, defendants have falsely and misleadingly described and suggested that the products they are selling and offering for sale emanate from and are sponsored or approved by Curlin.

77.     Defendants' statutory violations and other wrongful acts have injured and threaten to injure Curlin, including loss of customers, dilution of goodwill, confusion of existing and potential customers, and injury to its reputation.

78.     Defendants' acts are and have been willful and have damaged Curlin, and unless restrained, will continue to cause irreparable damage to Curlin, including damage to reputation and goodwill, in an amount that cannot be determined.  Curlin has no adequate remedy at law.

**Sixth Claim for Relief**
**(Common Law Trademark Infringement and Unfair Competition)**

79.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 78.

80.     Defendants' sale of the infringing products constitutes unfair competition in violation of the laws of New Jersey.  Defendants, by copying plaintiffs' product and by copying the CURLIN Mark and product images, have misappropriated plaintiffs' significant investment and expenditures into the marketing for plaintiffs' products and acquisition of the CURLIN Mark, and are seeking to take advantage of the market plaintiffs have created for their product.

81.     Upon information and belief, defendants' conduct is specially designed to capitalize on the goodwill of plaintiffs and has injured and threatens to injure plaintiffs, including loss of customers, dilution of goodwill and injury to their reputation.

82.     Defendants have unfairly competed with plaintiffs in violation of plaintiffs' common law rights.

83.     Upon information and belief, defendants' conduct was and is willful and intentional.

84.     Defendants' acts are and have damaged plaintiffs, and unless restrained, will continue to cause irreparable damage to plaintiffs, including damage to reputation and goodwill, in an amount that cannot be determined.  Plaintiffs have no adequate remedy at law.

## Jury Demand

85.     Plaintiffs demand trial by jury on all matters triable by jury.

**WHEREFORE**, plaintiffs are entitled to judgment for the following relief:

(1)     declaring that defendants have infringed one or more claims of the '921 and '732 Patents;

(2)     declaring that defendants have infringed the CURLIN Mark;

(3)     granting an injunction precluding defendants, their officers, directors, agents, servants, employees, attorneys, subsidiaries, affiliates, and all those acting in concert with them, from making, using, importing, selling, and/or offering for sale any products that infringe one or more claims of the '921 and '732 Patents, or otherwise directly or indirectly committing further acts of infringement of these patents;

(4)     granting an injunction, precluding defendants, their officers, directors, agents, servants, employees, attorneys, subsidiaries, affiliates, and all those acting in concert with them, from infringing the CURLIN Mark;

(5)     ordering an accounting for damages arising from defendants' acts of patent and trademark infringement and unfair competition;

(6)     awarding damages, with interest;

(7)     finding that defendants' patent and trademark infringements are willful, that this is an exceptional case, and awarding enhanced damages and reasonable attorneys' fees and costs to plaintiffs; and

(8)     awarding such further relief as this Court deems proper.

Dated:   May 2, 2016

**HODGSON RUSS LLP**
*Attorneys for Plaintiffs*

By:  s/Neil B. Friedman
Neil B. Friedman
Robert J. Lane, Jr. (to be admitted *pro hac vice*)
Melissa N. Subjeck (to be admitted *pro hac vice*)
1540 Broadway, 24th Floor
New York, New York  10036
Telephone:  (646) 218-7605
Facsimile:  (646) 218-7665
nfriedman@hodgsonruss.com
rlane@hodgsonruss.com
msubjeck@hodgsonruss.com

## **RULE 11.2 CERTIFICATION**

I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to plaintiffs that should be joined to this section.  In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated:  May 2, 2016

s/Neil B. Friedman
Neil B. Friedman

## **RULE 201.1 CERTIFICATION**

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the plaintiffs seek, *inter alia*, injunctive relief.

Dated:  May 2, 2016

s/Neil B. Friedman
Neil B. Friedman

- 17 -